liKNOLL, Judge.
Claimant, Truman L. Jackson (Jackson) filed a suit for disputed compensation in the *125 Office of Worker’s Compensation (OWC) against his former employer, Conagra Broiler Company (Conagra). After an administrative hearing, the hearing officer ruled in favor of Jackson and awarded him temporary total disability benefits (TTB), medical benefits, travel expenses, legal interest, and costs. Conagra appeals Jackson’s award of TTB. We reverse.
Facts
In December 1989, Conagra employed Jackson as a chicken catcher, a piecemeal position that pays $1.25 per thousand chickens caught. After approximately six or seven months of employment, on June 15, 1990, Jackson sustained a work-related injury to his left knee, after a breeder house door, ^constructed of chicken wire and wood, fell on him, striking his head and shoulders, causing him to fall to the floor of the breeder house.
On June 19, 1990, Jackson sought treatment from.Dr. James D. Knecht, a general practitioner in Nachitoches. Dr. Knecht conducted a complete physical examination and concluded that Jackson’s left knee was contused and had ligamentous inflammation. During the examination, Dr. Knecht also performed motion and palpation tests on Jackson’s upper extremities and cervical spine which indicated that Jackson had full motor function and range. Dr. Knecht also noted that Jackson experienced no tenderness in the area of his cervical spine. Dr. Knecht released Jackson to light duty work, prescribed pain medication, analgesic cream, heat, and referred him to Richard L. Gui-droz, a physical therapist, for conservative treatment of his knee.
On June 29, 1990, Jackson returned to Dr. Knecht for a follow-up examination. Because Jackson still complained of pain in his left knee, Dr. Knecht referred him to Dr. John P. Sandifer, a Nachitoches orthopedic surgeon, for orthopedic evaluation. On July 2, 1990, Dr. Sandifer examined Jackson and determined that he was still suffering from a strain, a contusion, and a possible cartilage tear to his left knee. Dr. Sandifer prescribed continued conservative treatment, and removed Jackson from work status. On August 15, 1990, after Jackson’s knee failed to respond to conservative treatment, Dr. Sandifer performed arthroscopic surgery. Thereafter, Jackson received several followup examinations from Dr. Sandifer and continued physical therapy from Mr. Guidroz. On October 30, 1990, Dr. Sandifer examined Jackson and told him that his knee injury was healing and had improved enough that he could expect to be released to work in about four weeks.
ROn December 5,1990, Dr. Sandifer examined Jackson again and released him to work status, finding that he had reached maximum medical benefit and had no further objective orthopedic problems. That same month, based upon Dr. Sandifer’s work release and medical findings, Conagra terminated Jackson’s temporary total disability benefits. Thereafter, Jackson filed a claim for disputed compensation on February 21, 1991.
On November 1, 1990, two days after Dr. Sandifer told him that he would be released to work status within four weeks, Jackson sought treatment from Dr. Arsham Naalban-dian, an Alexandria neurologist. During Dr. Naalbandian’s examination, Jackson complained of headaches, visual blurring, left lower extremity pain, and lower back pain. Notably, Jackson did not report any of these symptoms to his former doctors, Dr. Knecht and Dr. Sandifer. Dr. Naalbandian ordered diagnostic tests, including an EEG and a CT scan. Dr. Naalbandian did not find any disabling neurological disorders, but referred Jackson to Dr. C. Babson Fresh, an Alexandria doctor specializing in neurological surgery, for further neurological evaluation. Jackson also saw Dr. Bernard E. Patty, III, an Alexandria ophthalmologist, for his blurred vision.
Although Dr. Fresh discovered no clinical abnormalities or herniation of Jackson’s spine, he discovered some mild disc abnormalities at the L-4 and L5-S1 levels. Dr. Fresh prescribed further diagnostic testing which included an MRI. Dr. Fresh also referred Jackson to the Back to Work Center in Shreveport for a complete vocational assessment.
On July 10, 1992, Jackson reported to the Back to Work Center in Shreveport for voca *126 tional assessment. During the vocational assessment, Jackson exaggerated his injuries and reported symptoms inconsistent with his alleged injuries. Manuel 14VieIma, III, the vocational assessment expert who examined Jackson, reported that Jackson appeared to be under the influence of alcohol during the vocational assessment and that Jackson had attempted to manipulate the test results. In one instance, after Mr. Yielma told Jackson that he was doing well on the first vocational assessment tests, Jackson replied: “If I keep doing good [sic], I’ll never get any money.”
On February 16, 1993, based upon the report from the Back to Work Center, Dr. Fresh concluded in a letter that Jackson had been magnifying his lower back pain and related symptoms and that there was a lack of correlation between Jackson’s complaints and the established pathology.
After an administrative hearing, the hearing officer ruled in favor of the claimant and issued judgment on May 4, 1994. In her judgment, the hearing officer found that Jackson’s purported back injury was related to his original work-related accident of June 15, 1990, and reinstated Jackson’s temporary total disability benefits from the date of termination. The hearing officer also awarded Jackson all medical benefits and travel expenses associated with his back and knee injuries; legal interest and costs were also awarded to the claimant.
Law and Discussion
On appeal, Conagra complains that the hearing officer committed manifest error when she awarded Jackson temporary total disability benefits predicated upon Jackson’s alleged back injury.[1] Whether or not a plaintiff is temporarily totally disabled is a question of fact; when such a decision is based upon reasonable evaluations of credibility, such a determination of fact should not be disturbed on Rappeal when there is evidence before the trier of fact which furnishes a reasonable factual basis for such a finding, unless such findings are clearly wrong. Landry v. Central Industries, Inc., 592 So.2d 478 (La.App. 3 Cir.1991), writ denied, 593 So.2d 381 (La.1992).
We have thoroughly reviewed the record and find that the hearing officer committed manifest error when she found that Jackson had demonstrated an entitlement to TTB. An employee seeking TTB must establish and prove his entitlement to TTB by clear and convincing evidence. La.R.S. 23:1221(l)(c). The medical evidence submitted by the claimant fails to reasonably support Jackson’s assertion he suffers from a lower back injury or any other injury at this time that would entitle him to TTB. Moreover, the weight of the medical evidence contained in the record also shows that Jackson is no longer suffering from a disabling knee injury that would entitled him to TTB. La. R.S. 23:1221(1)(d). Therefore, the hearing officer erred when she awarded Jackson TTB based upon the evidence contained in the record.
Decree
For the foregoing reasons, we reverse, vacate, and set aside that portion of the OWC’s judgment awarding Jackson temporary total disability benefits. All costs of this appeal are assessed to Truman L. Jackson.
REVERSED AND RENDERED.

. Conagra did not brief, argue or assign error to the hearing officer's award of medical benefits, travel expenses, legal interest, or costs.